IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.:  18-cr-00267-REB-JMC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MERLE DENEZPI,

    Defendant.

_____

## GOVERNMENT'S SENTENCING STATEMENT
_____

The United States of America, through undersigned counsel, respectfully submits the following Sentencing Statement, pursuant to D.C.Colo.LCrR 32.1.

On March 1, 2019, following a four-day trial, a jury returned a guilty verdict against Merle Denezpi ("the Defendant") for Aggravated Sexual Abuse in Indian Country, in violation of 18 U.S.C. §§ 2241(a)(1) and (2) and 1153. [ECF #54].

### STATEMENT OF FACTS

Testimony at trial showed the following facts as relevant to sentencing and application of the UNITED STATES SENTENCING GUIDELINES ("Guidelines"):

Both the Defendant and V.Y. are members of the Navajo tribe from Shiprock, New Mexico.  On July 18, 2017, the Defendant met V.Y., an acquaintance, in Teec Nos Pos, Arizona.  The Defendant and V.Y. agreed to hitchhike together to Towaoc, Colorado.  Once in Towaoc, V.Y. walked to the Ute Mountain Ute Tribal Casino ("the

1

Casino"). The Defendant hitchhiked to the Eagleclaw Liquor Store outside of Cortez, Colorado.

Shortly before 11:00 p.m., V.Y. waited outside the Casino for a shuttle back to Shiprock. The Defendant approached and asked V.Y. to drink with him. V.Y. "followed the alcohol" and accompanied the Defendant to a secluded part of the parking lot. Meanwhile, the shuttle left, stranding V.Y. in Towaoc.

The Defendant invited V.Y. to his girlfriend's house, nearby. The house is within the exterior boundaries of the Ute Mountain Ute Indian reservation, in a location designated as "Indian Country" under federal law. V.Y. followed the Defendant, eventually going into the house on his invitation and urging.

V.Y. and the Defendant sat in the living room. Suddenly, the Defendant became angry and began pacing. The Defendant said, in essence, "you followed me for something, I'm going to give it to you!" The Defendant grabbed V.Y. by her shirt and hair and pulled her onto the floor. The Defendant demanded sex from V.Y.

The Defendant threatened to seriously hurt or kill V.Y. if she did not submit. Backing up his threats, the Defendant retrieved a four-foot post and stood menacingly over V.Y. V.Y. pleaded with the Defendant that they were cousins, reminded the Defendant that V.Y. knew his late mother, and reiterated that she prefers women sexual partners.

Undeterred, the Defendant ripped off V.Y.'s shirt and pants. As V.Y. attempted to stand up, the Defendant threw her back to the floor. The Defendant held V.Y. down with his hands pressing against her chest, forcibly restraining her movement. Over her pleas, the Defendant inserted his penis into V.Y.'s vulva and had non-consensual sex.

When the Defendant finished the assault, he told V.Y. that she was "not fucking leaving…[because] you're going to go the cops." The Defendant threatened to find and kill V.Y. if she reported the assault. To emphasize his point, the Defendant hid several items of V.Y.'s clothing to keep her in the house.

After some time of V.Y. waiting in terror, the Defendant fell asleep. V.Y. quietly found her clothing stuffed behind a recliner. V.Y. opened the door to the house and fled to the Casino. As V.Y. fled, she worried that the Defendant would carry out his threat and come after her with the post.

Shortly after, V.Y. reported the assault to law enforcement. A Sexual Assault Nurse Exam ("SANE") was conducted the next day in Farmington, New Mexico. The SANE nurse found twenty-four distinct injuries to V.Y.'s body, to include large bruises to V.Y.'s breasts, back, arms, and legs. The SANE nurse also found seven injuries to V.Y.'s genitals, including to her cervix and vaginal walls.

V.Y. testified that, in addition to substantial physical injuries, she felt anger, guilt, and shame that continues to this day.

About two hours after V.Y. left the house, Officer Chris Cable of the Bureau of Indian Affairs arrived to investigate V.Y.'s report. The Defendant testified at trial that when he heard Officer Cable knock on the door, he jumped out of a second-story window to "avoid" the police. The Defendant further testified that he ran to nearby vegetation, where he hid for approximately thirteen hours.

At around 6:00 p.m. on July 19, 2017, federal agents located the Defendant's hiding spot under the vegetation. The agents gave the Defendant several bottles of water and put him in an air conditioned car with the door open. The Defendant voluntarily spoke to the agents. The Defendant admitted at trial that he lied multiple

times about the prior day's events and his relationship with V.Y.  Only when confronted with possibility of DNA evidence did the Defendant eventually admit to having sex with V.Y.  The Defendant consented to a buccal swab for DNA evidence.  The Federal Bureau of Investigations Laboratory confirmed that the Defendant's DNA was found in multiple locations on V.Y.'s genitals.

On June 7, 2018, a federal grand jury returned an indictment against the Defendant, alleging a violation of 18 U.S.C. §§ 2241(a)(1) and (2), 1153, an offense styled as Aggravated Sexual Abuse in Indian Country.  [ECF #1].  On March 1, 2019, following a four-day jury trial, the Defendant was found guilty of the offense charge.  [ECF #54].

## Criminal History

In addition to other criminal history, the Defendant has four prior convictions for domestic violence related offenses.  Most egregiously, on December 21, 2009, the Defendant brutally assaulted a pregnant romantic partner by bashing her head on the ground.  *See* Ute Mountain Ute Case, 2010-3-CR; Bates # INV_00000131-132.  As a result of this assault, the victim miscarried the child.  *Id.*  The Defendant was prosecuted in the Court of Indian Offenses and served 92 days in jail.  *Id.*  Along the same lines, V.Y. testified at trial that she was friends with a separate romantic partner of the Defendant's who would frequently exhibit bruising caused by the Defendant's assaults.

Under the Guidelines, this 2009 offense would not be counted towards the Defendant's Criminal History Category solely because it is a tribal conviction.  Guideline §4A1.2(i).  In separate briefing, the Government will request an upward departure based on the inadequacy of criminal history under Guideline §4A1.3.

**SENTENCING COMPUTATION**

   A. *Statutory Penalties*

The maximum statutory penalty for a violation of 18 U.S.C. §§ 2241(a)(1) and (2), 1153 is up to life imprisonment; not more than a $250,000 fine, or both; not more than 5 years supervised release; and a $100 special assessment fee.

   B. *Guideline Calculations*

The Government calculates the advisory Guidelines as follows:

**Offense Level**

   A.      The base guideline is §2A3.1(a)(2) (Criminal Sexual Abuse), with a base offense level of **30**.

   B.      Because the offense involved conduct described in 18 U.S.C. § 2241(a), the base offense level is *increased by four levels* under §2A3.1(b)(1), resulting in an adjusted offense level of **34**.

   C.      No other specific offense characteristic in §2A3.1 apply.

   D.      Because, during the course of the offense, the Defendant physically restrained V.Y. by pulling her onto the floor and holding her down with his hands against her chest, the base offense level is *increased by two levels* under §3A1.3, resulting in an adjusted offense level of **36**.

   E.      Because the Defendant threatened V.Y., the victim of the offense, in an attempt to prevent V.Y. from reporting the conduct constituting the offense of conviction, the base offense level is *increased by two levels* under §3C1.1, app. n. 4(k), resulting in an adjusted offense level of **38**.

F. No other victim-related, role-in-offense, obstruction and/or multiple count adjustments apply.

**Criminal History**

G. Based on the information currently available to the Government, the Government estimates that the defendant's criminal history category would be **II**.

H. However, as described above, the Government intends to file a motion for an upward departure due to inadequacy of criminal history under §4A1.3 based on a tribal conviction from 2009. If the Court grants the Government's request, the Government estimates that the defendant's criminal history category would be **III**.

I. Assuming the criminal history facts known to the Government are correct, the armed career criminal statute does not apply.

**Imprisonment**

J. The advisory guideline range of imprisonment resulting from an offense level of **38** and criminal history category **II** is 262-327 months. The advisory guideline range of imprisonment resulting from an offense level of **38** and criminal history category **III** is 292-365 months

K. In order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 235 months (bottom of Category I with an offense level of 38) to life (the top of Category VI with an offense level of 38).

**Fine**

  I. Pursuant to guideline § 5E1.2, assuming an estimated offense level of **38**, the fine range for this offense would be $50,000 to $500,000 plus applicable interest and penalties.

**Supervised Release**

  J. Due to the nature of the offense, pursuant to guideline § 5D1.2(b)(2), the term of supervised release shall not be less than two years; however, the Sentencing Guidelines recommend the statutory maximum term of supervised release of five years of supervised release.

**Restitution**

  K. The Government believes that restitution may be owed to V.Y. and is in the process of determining what, if any, amount is appropriate.

## CONCLUSION

The evidence at trial established that the Defendant committed a vicious sexual assault against V.Y. In his wake, he left physical injuries and mental anguish that persists even now. The Defendant threatened V.Y.'s life if she reported his assault and took active steps to prevent her from fleeing. The Defendant admitted under oath that he fled the residence specifically to "avoid" law enforcement. Similarly, the Defendant admitted that he lied several times to federal agents investigating his assault.

Given the severe nature of the offense and the efforts taken by the Defendant to obstruct justice, only a sentence at the high end of the guideline range can vindicate the

sentencing factors at 18 U.S.C. § 3553.  Accordingly, the Government will argue for a sentence of 365 months imprisonment.

Respectfully submitted this 18th day of March 2019.

                                      JASON R. DUNN
                                      UNITED STATES ATTORNEY

By:  s/ *Jeffrey K. Graves*
Jeffrey K. Graves
Assistant United States Attorneys
103 Sheppard Drive, Suite 215
Durango, Colorado 81303
Telephone: (970) 247-1514
Email: jeffrey.graves@usdoj.gov
Attorney for the Government

## CERTIFICATE OF SERVICE

    I hereby certify that on this 18th day of March, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

    bduthie@trialdurango.com

    s/ *Jeffrey K. Graves*
    Jeffrey K. Graves
    Assistant United States Attorneys
    103 Sheppard Drive, Suite 215
    Durango, Colorado 81303
    Telephone: (970) 247-1514
    Email: jeffrey.graves@usdoj.gov
    Attorney for the Government